JUSTICE TRIEWEILER
specially concurring.
The majority opinion sets forth principles of law agreeable to the majority of this Court in language appropriate for judicial precedent. I offer this special concurring opinion as my personal observation regarding many of the federal decisions which have been cited to us as authority.
To those federal judges who consider forced arbitration as the panacea for their “heavy case loads” and who consider the reluctance of state courts to buy into the arbitration program as a sign of intellectual inadequacy, I would like to explain a few things.
In Montana, we are reasonably civilized and have a sophisticated system of justice which has evolved over time and which we continue to develop for the primary purpose of assuring fairness to those people who are subject to its authority.
Over the previous 100 years of our history as a state, our courts have developed rules of evidence for the purpose of assuring that disputes are resolved on the most reliable bases possible.
Based on the presumption that all men and women are fallible and make mistakes, we have developed standards for appellate review which protect litigants from human error or the potential arbitrariness of any one individual.
We believe in the rule of law so that people can plan their commercial and personal affairs. If our trial courts decline to follow those laws, our citizens are assured that this Court will enforce them.
We have rules for venue, and jurisdictional requirements based on the assumption that it is unfair to force people to travel long distances from their homes at great expense and inconvenience to prosecute or defend against lawsuits.
*383 We believe that our courts should be accessible to all, regardless of their economic status, or their social importance, and therefore, provide courts at public expense and guarantee access to everyone.
We have developed liberal rules of discovery (patterned after the federal courts) based on the assumption that the open and candid exchange of information is the surest way to resolve claims on their merits and avoid unnecessary trials.
We have contract laws and tort laws. We have laws to protect our citizens from bad faith, fraud, unfair business practices, and oppression by the many large national corporations who control many aspects of their lives but with whom they have no bargaining power.
While our system of justice and our rules are imperfect, they have as their ultimate purpose one overriding principle. They are intended, and continue to evolve, for the purpose of providing fairness to people, regardless of their wealth or political influence.
What I would like the people in the federal judiciary, especially at the appellate level, to understand is that due to their misinterpretation of congressional intent when it enacted the Federal Arbitration Act, and due to their naive assumption that arbitration provisions and choice of law provisions are knowingly bargained for, all of these procedural safeguards and substantive laws are easily avoided by any party with enough leverage to stick a choice of law and an arbitration provision in its pre-printed contract and require the party with inferior bargaining power to sign it.
The procedures we have established, and the laws we have enacted, are either inapplicable or unenforceable in the process we refer to as arbitration.
I am particularly offended by the attitude of federal judges, typified by the remarks of Judge Selya in the First Circuit, which were articulated in Securities Industry Ass’n v. Connolly (1st Cir. 1989), 883 F.2d 1114, cert. denied (1990), 495 U.S. 956, 110 S. Ct. 2559, 109 L. Ed. 2d 742.
Judge Selya considered “[i]ncreased resort to the courts” as the cause for “tumefaction of already-swollen court calendars.” He refers to arbitration as “a contractual device that relieves some of the organic pressure by operating as a shunt, allowing parties to resolve disputes outside of the legal system.” Connolly, 883 F.2d at 1116. He states that “[t]he hope has long been that the Act could serve as a therapy for the ailment of the crowded docket.” Connolly, 883 F.2d at 1116. He then bemoans that fact that, “[a]s might be expected, there *384 is a rub: the patient, and others in interest, often resist the treatment.” Connolly, 883 F.2d at 1116.
Judge Selya refers to the preference in the various state jurisdictions to resolve disputes according to traditional notions of fairness, and then suggests that “[t]he FAA was enacted to overcome this ‘anachronism’.” Connolly, 883 F.2d at 1119 (citation omitted). He considers it the role of federal courts to be “on guard for artifices in which the ancient suspicion of arbitration might reappear.” Connolly, 883 F.2d at 1119.
This type of arrogance not only reflects an intellectual detachment from reality, but a self-serving disregard for the purposes for which courts exist.
With all due respect, Judge Selya’s opinion illustrates an all too frequent preoccupation on the part of federal judges with their own case load and a total lack of consideration for the rights of individuals. Nowhere in Judge Selya’s lengthy opinion is there any consideration for the total lack of procedural safeguards inherent in the arbitration process. Nowhere in his opinion does he consider the financial hardship that contracts, like the one in this case, impose on people who simply cannot afford to enforce their rights by the process that has been forced upon them. Nowhere does Judge Selya acknowledge that the “patient” (presumably courts like this one) who resists the “treatment” (presumably the imposition of arbitration in lieu of justice) has a case load typically three times as great as Justice Selya’s case load.
The notion by federal judges, like Judge Selya, that people like the Casarottos have knowingly and voluntarily bargained and agreed to resolve their contractual disputes or tort claims by arbitration, is naive at best, and self-serving and cynical at worst. To me, the idea of a contract or agreement suggests mutuality. There is no mutuality in a franchise agreement, a securities brokerage agreement, or in any other of the agreements which typically impose arbitration as the means for resolving disputes. National franchisors, like the defendant in this case, and brokerage firms, who have been the defendants in many other arbitration cases, present form contracts to franchisees and consumers in which choice of law provisions and arbitration provisions are not negotiable, and the consequences of which are not explained. The provision is either accepted, or the business or investment opportunity is denied. Yet these provisions, which are not only approved of, but encouraged by people like Judge Selya, do, in effect, subvert our system of justice as we have come to know it. If any *385 foreign government tried to do the same, we would surely consider it a serious act of aggression.
Furthermore, if the Federal Arbitration Act is to be interpreted as broadly as some of the decisions from our federal courts would suggest, then it presents a serious issue regarding separation of powers. What these interpretations do, in effect, is permit a few major corporations to draft contracts regarding their relationship with others that immunizes them from accountability under the laws of the states where they do business, and by the courts in those states. With a legislative act, the Congress, according to some federal decisions, has written state and federal courts out of business as far as these corporations are concerned. They are not subject to California’s labor laws or franchise laws, they are not subject to our contract laws or tort laws. They are, in effect, above the law.
These insidious erosions of state authority and the judicial process threaten to undermine the rule of law as we know it.
Nothing in our jurisprudence appears more intellectually detached from reality and arrogant than the lament of federal judges who see this system of imposed arbitration as “therapy for their crowded dockets.” These decisions have perverted the purpose of the FAAfrom one to accomplish judicial neutrality, to one of open hostility to any legislative effort to assure that unsophisticated parties to contracts of adhesion at least understand the rights they are giving up.
It seems to me that judges who have let their concern for their own crowded docket overcome their concern for the rights they are entrusted with should step aside and let someone else assume their burdens. The last I checked, there were plenty of capable people willing to do so.